UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 07 CV 3650

-----------------------------------------------------------------------x

PHILIP HOPKINS and RALPH STEVENS, sometimes
doing business as OWZMAN MANAGEMENT, now
known as OWZMAN MANAGEMENT &
CONSULTING, INC.,

# JUDGE BUCHWALD

                     Plaintiffs,

      - against –

VISUAL TREASURES, LLC, HALFMOON
INVESTMENTS, LLC, sometimes doing business as
DIGITAL1STOP, MILL CREEK ENTERTAINMENT
LLC, IAN WARFIELD, and "Unknown Entities 1-10," the
names of Unknown Entities currently being unknown to
Plaintiffs, but intended to be those to which the individual
Defendants diverted assets of opportunities belonging to
Plaintiffs, or which otherwise benefited at the expense of
Plaintiffs as described in the Verified Complaint,

                    Defendants.

-----------------------------------------------------------------------x

MAY 0 8 2007

U.S.D.C. S.D. N.Y.
CASHIERS

**NOTICE OF
REMOVAL**

      **PLEASE TAKE NOTICE**, that the within action is hereby removed to the

United States District Court for the Southern District of New York pursuant to 28 U.S.C.

§§ 1441 and 1446. The basis for removal is as follows:

      1.      On or about April 16, 2007, the plaintiffs in the above caption commenced

an action against the defendants in the above caption in the Supreme Court of the State of

New York, County of New York (the "State Court Action"). Plaintiffs personally served

defendant Visual Treasures, LLC in New York on April 16, 2007. Plaintiffs served the

remaining defendants in the State of Minnesota on or about April 22, 2007. Accordingly,

this notice is timely filed. This Court has original jurisdiction over this action pursuant to

28 U.S.C. § 1332(a) based on diversity of citizenship and the amount in controversy being in excess of $75,000, exclusive of interests and costs.

2.    The citizenships of the plaintiffs in the State Court Action are as follows: Plaintiff Philip Hopkins is a citizen of the State of Massachusetts, residing in that state. Mr. Hopkins' residential address is, upon information and belief, 1166 New Ipswich Road, Ashby, Massachussetts. Plaintiff Ralph Stevens is a citizen of the State of New York, residing in that state. Mr. Stevens' residential address is 178 East 78th Street, New York, New York. Owzman Management, now known as Owzman Management & Consulting Inc. ("OMC"), is a corporation organized under the laws of the State of New York with its principal place of business in the State of New York. OMC's principal place of business is, upon information and belief, 1747 First Avenue, New York, New York.

3.    The citizenships of the defendants in the State Court Action are as follows: Defendant Visual Treasures, LLC ("VT"), defendant Halfmoon Investments, LLC, n/k/a Digital1stop ("Halfmoon"), and defendant Mill Creek Entertainment, LLC ("Mill Creek") (collectively, the "Defendant LLCs"), are each limited liability companies organized and existing under the laws of the State of Minnesota with principal places of business in the State of Minnesota. All of the members of the Defendant LLCs are citizens and residents of the State of Minnesota. Defendant Ian Warfield is a citizen of the State of Minnesota residing in that State.

4.    The members of VT are Robert Zakheim, Scott Moss and Ian Warfield. Mr. Zakheim is a citizen of the State of Minnesota and resides at 14859 Richards Drive West, Minnetonka, Minnesota. Mr. Moss is a citizen of Minnesota and resides at 2230

Oakland Road, Minnetonka, Minnesota.  Mr. Warfield is a citizen of the State of Minnesota and resides at 9236 Amsden Way, Eden Prarie, Minnesota.

5.    The members of Half Moon are Messers. Zakheim, Moss and Warfield. As set forth above, Messers. Zakheim, Moss and Warfield are citizens of and residents of the State of Minnesota.  Their residential addresses are set forth in paragraph "4," above.

6.    The member of Mill Creek is Half Moon.  The members of Half Moon are Messers. Zakheim, Moss and Warfield.  As set forth above, Messers Zakheim, Moss and Warfield are citizens and residents of the State of Minnesota.  Their residential addresses are set forth in paragraph "4," above.

7.    The Complaint in the State Court action seeks damages in an amount no less than $287,500, thereby satisfying the minimum amount in controversy requirements under the removal statute.

**PLEASE TAKE FURTHER NOTICE**, that pursuant to 28 U.S.C. § 1446(a) a copy of all process, pleadings, and orders served upon the Defendants is attached to this notice.  A copy of the Summons and Verified Complaint filed under New York County Index No. 07-601233 is attached as Exhibit A; a copy of a Stipulation extending the defendants' time to answer is annexed as Exhibit B; plaintiffs' Order to Show Cause and related affidavits in the State Court and the defendants' opposition to the Order to Show Cause are attached as Exhibits C and D, respectively.

Dated: New York, New York
       May 8, 2007

BRUNELLE & HADJIKOW                    HOFFMAN & POLLOK LLP
& WELTZ, P.C.

By: _Timothy P. Kebbe_ (signature)    By: _William A. Rome_ (signature)
    Timothy P. Kebbe                       William A. Rome
*Attorneys for Defendant*              *Attorneys for Defendants*
*Visual Treasures, LLC*                *Halfmoon Investments, LLC,*
40 Broad Street, 6th Floor             *sometimes doing business as*
New York, New York 10004               *Digital1Stop, Mill Creek*
Tel. (212) 809-9100                    *Entertainment LLC and Ian Warfield*
Fax (212) 809-3219                     260 Madison Avenue, 22nd Floor
                                       New York, New York 10016
                                       Tel. (212) 679-2900
                                       Fax (212) 679-1844


TO:    Douglas J. Bilotti, Esq.
       Moritt Hock Hamroff & Horowitz LLP
       *Attorneys for Plaintiffs Philip Hopkins*
       *and Ralph Stevens, sometimes doing business*
       *as Owzman Management, now known as*
       *Owzman Management & Consulting, Inc.*
       400 Garden City Plaza
       Garden City, New York 11530
       Tel. (516) 873-2000
       Fax (516) 873-2110


       Clerk of the Supreme Court
       County of New York
       60 Centre Street
       New York, NY 10007

{00044227}                          4

# EXHIBIT  A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

PHILIP HOPKINS, and RALPH STEVENS sometimes
doing business as OWZMAN MANAGEMENT, now
known as OWZMAN MANAGEMENT &
CONSULTING, INC.,

                        Plaintiffs,

       -against-

~~VISUAL TREASURES, LLC, HALFMOON~~
INVESTMENTS, LLC sometimes doing business as
DIGITAL1STOP, MILL CREEK ENTERTAINMENT, LLC,
IAN WARFIELD, and "Unknown Entities 1-10",
the names of the Unknown Entities currently being
unknown to Plaintiffs, but intended to be those to which
the individual Defendants diverted assets or
opportunities belonging to Plaintiffs, or which
otherwise benefited at the expense of Plaintiffs as
described in the Verified Complaint,

                       Defendants.

-----------------------------------------------------------------X

Date Filed:
Index No.

Plaintiff designates New York
County as the place of trial

## SUMMONS

The basis of the venue is
Ralph Stevens' residence,
and contract.

     Plaintiff resides at 178 East 70th Street, New York, New York 10021
County of New York
To the above named Defendants:

### *You are hereby summoned* to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorneys within 20 days after the service of this summons, exclusive of the
day of service (or within 30 days after the service is complete if this summons is not personally delivered
to you within the State of New York); and in case of your failure to appear or answer, judgment will be
taken against you by default for the relief demanded in the complaint.

Dated: Garden City, New York
       April 12, 2007

                **MORITT HOCK HAMROFF & HOROWITZ LLP**
                Attorneys for Plaintiffs

                By: _____
                   Douglas J. Pilotti, Esq.
                400 Garden City Plaza
                Garden City, New York 11530
                (516) 873-2000

Defendants' Addresses:

Visual Treasures, LLC
2445 Nevada Avenue South
Golden Valley, MN 55427

Halfmoon Investments, LLC
2445 Nevada Avenue South
Golden Valley, MN 55427

Mill Creek Entertainment, LLC
2445 Nevada Avenue South
Golden Valley, MN 55427

Ian Warfield
c/o Visual Treasures, LLC
2445 Nevada Avenue South
Golden Valley, MN 55427

F:\Film Chest\Documents\Summons.Doc

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
PHILIP HOPKINS, and RALPH STEVENS sometimes
doing business as OWZMAN MANAGEMENT, now
known as OWZMAN MANAGEMENT &
CONSULTING, INC.,

                           Index No.

                Plaintiffs,

                           **VERIFIED COMPLAINT**

     -against-

VISUAL TREASURES, LLC, HALFMOON
INVESTMENTS, LLC sometimes doing business as
DIGITAL1STOP, MILL CREEK ENTERTAINMENT LLC,
IAN WARFIELD, and "Unknown Entities 1-10",
the names of the Unknown Entities currently being
unknown to Plaintiffs, but intended to be those to which
the individual Defendants diverted assets or
opportunities belonging to Plaintiffs, or which
otherwise benefited at the expense of Plaintiffs as
described in the Verified Complaint,

                Defendants.
----------------------------------------------------------------X

       Plaintiffs, Philip Hopkins, and Ralph Stevens sometimes doing business as

Owzman Management, now known as Owzman Management & Consulting, Inc. by their

undersigned attorneys, Moritt Hock Hamroff & Horowitz LLP, as and for his Verified Complaint

herein, respectfully alleges as follows:

                           **PARTIES**

      1.     Philip Hopkins ("Hopkins") is an individual residing in the State of

Massachusetts.

      2.     Ralph Stevens is an individual residing in the State of New York.

      3.     Ralph Stevens sometimes does business as Owzman Management, now

known as Owzman Management & Consulting, Inc. (collectively "Stevens").

      4.     Upon information and belief, Defendant Visual Treasures, LLC is a

limited liability company organized under the laws of the State of Minnesota ("Visual").

5.      Upon information and belief, Defendant Halfmoon Investments, LLC is a limited liability company organized under the laws of the State of Minnesota.

6.      Upon information and belief, Defendant Halfmoon Investments, LLC sometimes does business as Digital1stop (collectively "D1S").

7.      Upon information and belief D1S is Visual's alter-ego and is answerable for its debts.

8.      Upon information and belief, Defendant Mill Creek Entertainment, LLC is a limited liability company organized under the laws of the State of Minnesota ("Mill Creek").

9.      Upon information and belief, Defendant Ian Warfield ("Warfield") is a resident of the State of Minnesota.

10.     Defendants "Unknown Entities 1-10" ("Unknown Entities") are intended to be those entities currently unknown to Plaintiffs, to which Visual, D1S and/or Mill Creek have, as is discussed in more detail below, diverted assets or opportunities belonging to Plaintiffs, or which have otherwise benefited at the expense of Plaintiffs.

## BACKGROUND

**Treeline Agreement**

11.     Treeline Entertainment Ltd. ("Treeline") was in the business of acquiring quality masters of public domain films and audio content, creating budget compilations and product offerings therefrom and contracting with distributors to sell the product into retail markets.

12.     Stevens, Hopkins and Warfield were the sole shareholders of all of Treeline's stock.

13.     Stevens and Hopkins owned fifty (50%) percent of the stock in Treeline

2

and Warfield owned fifty (50%) percent of the stock in Treeline.

14.     D1S was a distributor of Treeline's products.

15.     Treeline and D1S agreed that D1S would distribute Treeline's media content to various retail stores.

16.     Treeline and D1S initially agreed that D1S would collect the fee from the retail stores, remit seventy-five (75%) percent of the fee to Treeline within thirty (30) days of collection and retain twenty-five (25%) of the fee for itself.

17.     Over the course of their business relationship D1S's indebtness to Treeline swelled to a sum in excess of One Million Five Hundred Thousand Dollars ($1,500,000.00) by October, 2004.

18.     In or about October, 2004, D1S approached Hopkins, Stevens and Warfield inquiring about merging D1S and Treeline and/or purchasing Treeline's assets.

19.     Between October, 2004 and December, 2004 Hopkins and Stevens negotiated terms of an asset purchase with D1S.

20.     On or about November 18, 2004, Visual was formed as limited liability company by Warfield in partnership with D1S.  Visual is now represented to be a wholly owned subsidiary of D1S.

21.     Based upon the mutually agreed upon valuation of Treeline of Three Million Dollars ($3,000,000.00) the total sum to be paid by D1S/Visual to Stevens and Hopkins for their fifty (50%) percent interest in Treeline under various agreements was One Million Five Hundred Thousand Dollars ($1,500,000.00) as set forth below.

22.     Pursuant to an Asset Purchase Agreement date January 14, 2005 (the "Asset Purchase Agreement") Treeline agreed to sell, and Visual agreed to purchase certain assets and goodwill of Treeline for the sum of four hundred thousand dollars ($400,000.00)

3

pursuant to a certain Asset Purchase Agreement dated as of January 14, 2005 (the "Sale").

23.    In the Fall of 2004, Visual (prior to its initial filing with the Minnesota Secretary of State) paid Hopkins and Stevens, collectively, a $100,000.00 deposit toward the sale price.

24.    Visual paid Hopkins and Stevens, collectively, $100,000.00 toward the Sale at closing, with the remaining $200,000.00 paid to Warfield for his fifty (50%) percent interest in Treeline.

25.    Treeline's collateral is now being packaged and sold under the name and branding of Mill Creek, and other Unknown Entities, and is even being offered for download pursuant to an agreement between Mill Creek and EZtakes.com.

**Security Agreement**

26.    As security for the Sale, Visual granted Hopkins and Stevens a first priority security interest in and to the production/glass masters identified in the Security Agreement (the "Security Agreement").

**Stevens And Hopkins Consulting Agreements**

27.    As part of the consideration for the Sale, on or about January 14, 2005 Stevens entered into a consulting agreement ("Stevens Consulting Agreement") with Visual for the sum of $600,000.00.

28.    Pursuant to the terms of the Stevens Consulting Agreement, Visual is obligated to pay Stevens the total sum of $600,000.00 over a four (4) year term payable as follows:  (i) $150,000.00 on January 14, 2005; and (ii) $12,500.00 per month for each consecutive month from January 14, 2006 through December 14, 2009.

29.    As part of the consideration for the Sale, on or about January 14, 2005 Hopkins entered into a consulting agreement ("Hopkins Consulting Agreement") with Visual for

4

the sum of $600,000.00.

30.    Pursuant to the terms of the Hopkins Consulting Agreement, Visual is obligated to pay Hopkins the total sum of $600,000.00 over a four (4) year term payable as follows: (i) $150,000.00 on January 14, 2005; and (ii) $12,500.00 per month for each consecutive month from January 14, 2006 through December 14, 2008.

31.    Warfield did not enter into a consulting agreement with Visual, rather, Visual hired Warfield to manage its business affairs.

**Non-Compete Agreements**

32.    Contemporaneously with the execution of the Stevens Consulting Agreement, Stevens and Visual entered into a Non-Compete Agreement dated as of January 14, 2005 (the "Stevens Non-Compete Agreement").

33.    The Stevens Non-Compete Agreement provides that in consideration for Stevens covenant not to compete with Visual for a term of five (5) years from January 14, 2005, Visual will pay Stevens fifty thousand dollars ($50,000.00) on or before January 14, 2008.

34.    Contemporaneously with the execution of the Hopkins Consulting Agreement, Hopkins and Visual entered into a Non-Compete Agreement dated as of January 14, 2005 (the "Hopkins Non-Compete Agreement"). The Asset Purchase Agreement, the Security Agreement, the Stevens Consulting Agreement, the Hopkins Consulting Agreement, the Stevens Non-Compete Agreement and the Hopkins Non-Compete Agreement as sometimes collectively referred to herein as the "Sales Documents".

35.    The Hopkins Non-Compete Agreement provides that in consideration for Hopkins covenant not to compete with Visual for a term of five (5) years from January 14, 2005, Visual will pay Hopkins fifty thousand dollars ($50,000.00) on or before January 14, 2008.

**Warfield**

36.    Prior to its sale, Warfield was the President of Treeline.

37.    By reason of their status as officers of Treeline, Warfield, Hopkins and Stevens owe each other a fiduciary duty with respect to Treeline.

38.    Warfield was also Vice President and a shareholder with Hopkins and Stevens in another corporation named Film Chest, Inc.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST VISUAL

39.    Hopkins repeats, reiterates and realleges the allegations contained in paragraphs "1" through "38" as if set forth fully herein.

40.    Visual made payments totaling $312,500.00 toward the amounts due under the Hopkins Consulting Agreement.

41.    Visual is in default under the terms of the Hopkins Consulting Agreement by reason of its failure to make the payment due on February 14, 2007, and each and every payment due thereafter.

42.    By letter dated February 21, 2007, Visual was provided with written notice that its failure to make payment was an Event of Default ("Demand Letter").

43.    More than fifteen (15) days have passed since the mailing of the Demand Letter and Visual has failed to cure its default.

44.    By reason of the forgoing there is due and owing to Hopkins the sum of $600,000.00 less payments of $312,500.00 for a balance due and owing of $287,500.00, plus applicable interest.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST VISUAL

45.    Stevens repeats, reiterates and realleges the allegations contained in paragraphs "1" through "44" as if set forth fully herein.

46.    Pursuant to the terms of the Stevens Consulting Agreement, Visual is obligated to pay Stevens the total sum of $600,000.00 over a four (4) year term payable as follows:  (i) $150,000.00 on January 14, 2005; and (ii) $12,500.00 per month for each consecutive month from January 14, 2006 through December 14, 2008.

47.    Visual made payments totaling $312,500.00 toward the amounts due under the Stevens Confidentiality Agreement.

48.    Visual is in default under the terms of the Consulting Agreement by reason of its failure to make the payment due on February 14, 2007 and each and every payment due thereafter.

49.    Pursuant to the Demand Letter February 21, 2007, Visual was provided with written notice that its failure to make payment was an Event of Default.

50.    More than fifteen (15) days have passed since the mailing of the Demand Letter and Visual has failed to cure its default.

51.    By reason of the forgoing there is due and owing to Stevens the sum of $600,000.00 less payments of $312,500.00 for a balance due and owing of $287,500.00, plus applicable interest.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST VISUAL

52.    Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "51" as if set forth fully herein.

53.    Pursuant to the terms of the Stevens Non-Compete Agreement, Visual is obligated to pay Stevens the total sum of $50,000.00 on or before January 14, 2008.

54.    Visual has not made any payments towards the amounts due under the Stevens Non-Compete Agreement.

55.    Pursuant to the Demand Letter February 21, 2007, Visual was provided with written notice that its failure to make payment under the Stevens Non-Compete Agreement and the other Sales Documents was an Event of Default.

56.    More than fifteen (15) days have passed since the mailing of the Demand Letter and Visual has failed to cure its default.

57.    By reason of the forgoing there is due and owing to Stevens the sum of $50,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST VISUAL

58.    Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "57" as if set forth fully herein.

59.    Pursuant to the terms of the Hopkins Non-Compete Agreement, Visual is obligated to pay Hopkins the total sum of $50,000.00 on or before January 14, 2008.

60.    Visual has not made any payments towards the amounts due under the Hopkins Non-Compete Agreement.

61.    Pursuant to the Demand Letter February 21, 2007, Visual was provided with written notice that its failure to make payment under the Hopkins Non-Compete Agreement and the other Sales Documents was an Event of Default.

62.    More than fifteen (15) days have passed since the mailing of the Demand Letter and Visual has failed to cure its default.

63.   By reason of the forgoing there is due and owing to Hopkins the sum of $50,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST VISUAL

64.   Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "63" as if set forth fully herein.

65.   The Security Agreement grants Hopkins and Stevens a security interest in the production/glass masters identified on Exhibit "A" to the Security Agreement.

66.   In addition to the production/glass masters identified in Exhibit "A" to the Security Agreement, Hopkins and Stevens provided Visual with additional production/glass masters.  The production/glass masters identified on Exhibit "A" to the Security Agreement and additional production/glass masters are collectively referred to herein as the "Collateral".

67.   Pursuant to the terms of the Security Agreement, Hopkins and Stevens are entitled to the immediate possession of the Collateral.

68.   By virtue of Visual's default under the Agreements, Hopkins and Stevens are entitled to the immediate possession of the Collateral.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST VISUAL

69.   Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "68" as if set forth fully herein.

70.   The Security Agreement provides that Visual shall be liable for, and shall pay to Stevens and Hopkins, reasonable attorneys' fees and other expenses incurred in the enforcement of the Security Agreement and Consulting Agreements.

71.   By reason of the foregoing, there is presently due and owing from Visual to Stevens and Hopkins such costs, expenses and reasonable attorneys' fees as may be

9

determined by this Court.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## AGAINST VISUAL, D1S, MILL CREEK, AND UNKNOWN ENTITIES
### (Tortious Interference with Prospective Economic Advantage)

72.      Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "71" as if set forth fully herein.

73.      Visual, D1S, Mill Creek, and Unknown Entities have, and continue to purposefully inundate the marketplace with Plaintiffs' Collateral without compensating Plaintiffs for the use of the Collateral, notwithstanding the fact that Visual is in default under the terms of the Agreements.

74.      Visual's, D1S's and Mill Creek's, and Unknown Entities' actions are purposefully directed to interfering with Plaintiffs' right to realize the economic benefits of the return of their Collateral.

75.      By reason of Visual's, D1S's, Mill Creek's, and Unknown Entities tortious interference with the prospective economic advantage of Plaintiffs' interest in the Collateral, Plaintiffs are entitled to a judgment in an amount to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## AGAINST VISUAL, D1S, MILL CREEK, AND UNKNOWN ENTITIES
### (Constructive Trust)

76.      Hopkins and Stevens repeat, reiterate and reallege the allegations contained in paragraphs "1" through "75" as if set forth fully herein.

77.      Hopkins and Stevens are entitled to have a constructive trust imposed upon all revenues generated by Visual, D1S, Mill Creek, and Unknown Entities through the use of the Collateral without compensating Hopkins and Stevens therefor.

78.      By reason of the foregoing, Plaintiffs are entitled to judgment in an amount to be determined at trial.

10

## AS AND FOR A NINTH CAUSE OF ACTION
## AGAINST WARFIELD
### (Breach of Fiduciary Duty)

79.     Hopkins and Stevens repeat, reiterate and reallege the allegations contained in paragraphs "1" through "78" as if set forth fully herein.

80.     While an officer of Treeline, D1S compensated Warfield in the amount of approximately One Hundred Thousand Dollars ($100,000.00) per year for the development of certain media products for D1S's distribution.

81.     Upon information and belief, Warfield did not independently obtain all of the media products provided to D1S.

82.     Rather, a large portion of the media product provided by Warfield to D1S were part of Treeline's library of media content.

83.     Notwithstanding Warfield's use of Treeline's assets for his personal gain, Warfield did not turn over to Treeline any of the remuneration paid to him by D1S.

84.     By reason of the foregoing, Warfield breached his fiduciary duty to Hopkins and Stevens.

85.     Plaintiffs are entitled to a judgment against Warfield in an amount to be determined at trial.

## AS AND FOR A TENTH CAUSE OF ACTION
## AGAINST WARFIELD
### (Accounting)

86.     Hopkins and Stevens repeat, reiterate and reallege the allegations contained in paragraphs "1" through "85" as if set forth fully herein.

87.     By reason of the foregoing, Warfield is required to account to Hopkins and Stevens for all amounts derived by Warfield which relate to Treeline's content.

88.     Hopkins and Stevens have no adequate remedy at law.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## AGAINST WARFIELD
### (Breach of Fiduciary DutyAccounting)

89.    Hopkins and Stevens repeat, reiterate and reallege the allegations contained in paragraphs "1" through "88" as if set forth fully herein.

90.    The payment terms for all amounts due from D1S to Treeline for the sums collected by D1S from distribution of Treeline's media content to retail stores was "net thirty-days".

91.    As a result of Warfield's mismanagement of Treeline's business affairs, Warfield authorized D1S to make its payment to Treeline after one hundred twenty (120) days.

92.    D1S failed to make the payment within one hundred twenty (120) days.

93.    In or about October, 2004, D1S owed Treeline in excess of One Million Five Hundred Thousand ($1,500,000.00) Dollars.

94.    As a result of Warfield providing D1S with authority to delay payment when due, Treeline had difficulty meeting its own obligations to third parties.

95.    Upon information and belief, Warfield purposely allowed Treeline to overextend itself so that Treeline would have to accept D1S's offer to purchase Treeline.

96.    As a result of Warfield's mismangement, Stevens and Hopkins received less than they would have from the sale of Treeline's assets.

97.    Warfield's conduct as aforesaid constitutes a breach of his fiduciary duty to Treeline, Stevens and Hopkins.

98.    By reason of Warfield's breach of his fiduciary duty Stevens and Hopkins have been damaged in an amount to be determined at trial.

## AS AND FOR A TWELFH CAUSE OF ACTION
## AGAINST D1S, MILL CREEK, AND UNKNOWN ENTITIES
### (Unjust Enrichment)

99.     Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "98" as if set forth fully herein.

100.     D1S, Mill Creek, and Unknown Entities have been unjustly enriched to the extent they have received and/or benefited from the use of Plaintiffs' Collateral.

101.     By reason of the foregoing, Plaintiffs are entitled to a judgment against D1S, Mill Creek, and Unknown Entities in an amount to be established at trial.

## AS AND FOR A THIREENTH CAUSE OF ACTION
## AGAINST VISUAL, D1S, MILL CREEK, AND UNKNOWN ENTITIES
### (Permanent Injunction)

102.     Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "101" as if set forth fully herein.

103.     Plaintiffs are entitled to the immediate return of the Collateral from Visual.

104.     Notwithstanding Visual's default, Visual, D1S, Mill Creek and Unknown Entities continue to use and distribute the Collateral despite Plaintiffs' demand for the return thereof.

105.     By reason of the foregoing, Plaintiffs are entitled to a permanent injunction, enjoining Visual, D1S, Mill Creek, and Unknown Entities from any use, sale, and/or distribution of the Collateral.

106.     Plaintiffs do not have an adequate remedy of law.

13

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## AGAINST VISUAL
### (Declaratory Judgment)

107.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "106" of the Verified Complaint with the same force and effect as if fully set forth herein.

108.    As a result of Visual's breach under the Stevens Non-Compete Agreement and the Hopkins Non-Compete Agreement (collectively the "Non-Compete Agreements"), the Non-Compete Agreements are void.

109.    By reason of the foregoing, Hopkins and Stevens hereby request a declaration from this Court that the Non-Compete Agreements are void.

110.    Hopkins and Stevens have no adequate remedy at law.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
## AGAINST D1S

111.    Plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "110" as if set forth fully herein.

112.    D1S negotiated all of the terms of the agreements with Hopkins and Stevens.

113.    Upon information and belief D1S failed to adequately capitalize Visual (as it agreed to do in the Letter of Intent) to allow Visual to generate sufficient income and meet its obligations under the Agreements.

114.    Visual and D1S maintain the same address.

115.    Upon information and belief Halmoon uses Visual's property as if it were owned by D1S.

116.    Upon information and belief Visual and D1S maintain the same telephone

number.

117.    Upon information and belief D1S does not deal with Visual at arms length.

118.    Upon information and belief, D1S was and is the exclusive distributor of Visual's products.

119.    Upon information and belief D1S did not treat Visual as an independent profit center.

120.    Upon information and belief, D1S foreclosed on the assets of Visual with the purpose of stripping Visual of assets in anticipation for impending legal liability.

121.    Upon information and belief D1S formed Visual for the sole purpose of gaining access to Plaintiff's Collateral without paying the full amount therefor.

122.    D1S, through its domination, abused the privilege of doing business as a limited liability company to perpetrate a wrong against Plaintiffs.

123.    By reason of the forgoing, there is currently due and owing from D1S to Plaintiffs an amount to be determined at trial, but in no event less than $675,000.00.

**WHEREFORE**, Plaintiffs respectfully pray for Judgment as follows:

(a)    On the First Cause of Action in favor of Hopkins and against Visual in the amount of $287,500.00, plus applicable interest;

(b)    On the Second Cause of Action in favor of Stevens and against Visual in the amount of $287,500.00, plus applicable interest;

(c)    On the Third Cause of Action in favor of Stevens and against Visual in the amount of $50,000.00;

(d)    On the Fourth Cause of Action in favor of Hopkins and against Visual in the amount of $50,000.00;

(e)    On the Fifth Cause of Action in favor of Hopkins and Stevens and against Visual for the immediate possession of the Collateral;

(f)    On the Sixth Cause of Action in favor of Hopkins and Stevens and against Visual for reasonable attorneys fees and costs;

(g)    On the Seventh Cause of Action in favor of Hopkins and Stevens and against Visual, D1S, Mill Creek, and Unknown Entities in an amount to be determined at trial;

(h)    On the Eighth Cause of Action in favor of Hopkins and Stevens and against Visual, D1S, Mill Creek, and Unknown Entities in an amount to be determined at trial;

(i)    On the Ninth Cause of Action in favor of Hopkins and Stevens and against Warfield in an amount to be determined at trial;

(j)    On the Tenth Cause of Action in favor of Hopkins and Stevens and against Warfield for an accounting;

(k)    On the Eleventh Cause of Action in favor of Hopkins and Stevens and against  Warfield in an amount to be determined at trial;

(l)    On the Twelfth Cause of Action in favor of Hopkins and Stevens and against D1S, Mill Creek, and Unknown Entities in an amount to be established at trial;

(m)    On the Thirteenth Cause of Action in favor of Hopkins and Stevens permanently enjoining Visual, D1S, Mill Creek, and Unknown Entities from any use, sale, and/or distribution of the Collateral;

(n)    On the Fourteenth Cause of Action in favor of Hopkins and Stevens and against D1S for an amount to be determined at trial, but in no event less than $675,000.00; and

(o)    Granting such other and further relief as this Court deems necessary and proper.

Dated: Garden City, New York
      April 12, 2007


                                   MORITT HOCK HAMROFF & HOROWITZ LLP
                                   Attorneys for Plaintiffs

                                   By: _____
                                       Douglas J. Bilotti
                                   400 Garden City Plaza
                                   Garden City, New York 11530
                                   (516) 873-2000

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

Ralph Stevens, being duly sworn, deposes and says:

I am a Plaintiff herein.  I have read the annexed Verified Complaint, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
Ralph Stevens

Sworn to before me this
12TH day of April, 2007

_____
NOTARY PUBLIC

LORNA E. KENNY
Notary Public, State of New York
No. 01KE6066275
Qualified in Kings County
Commission Expires Nov. 13, 2007

18

# EXHIBIT  B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTRY OF NEW YORK
------------------------------------------------X

PHILIP HOPKINS and RALPH STEVENS, sometimes          :
doing business as OWZMAN MANAGEMENT, now
known as OWZMAN MANAGEMENT &                          :     Index No. 07-601233
CONSULTING, INC.,
                                                     :

                                   Plaintiffs,       :     **STIPULATION**

          - against -                                :

VISUAL TREASURES, LLC, HALFMOON                      :
INVESTMENTS, LLC, sometimes doing business as
DIGITAL1STOP, MILL CREEK ENTERTAINMENT LLC, :
IAN WARFIELD, and "Unknown Entitles 1-10,"
the names of Unknown Entitles currently being        :
unknown to Plaintiffs, but intended to be those to which
the individual Defendants diverted assets or         :
opportunities belonging to Plaintiffs, or which
otherwise benefited at the expense of Plaintiffs as
described in the Verified Complaint,                 :

                                   Defendants.       :
------------------------------------------------X

        IT IS HEREBY STIPULATED AND AGREED by and between the undersigned

attorneys for plaintiffs and defendants that defendants' time to answer, move or otherwise

respond to Summons and Complaint, both dated April 12, 2007, is extended until and including

ten (10) calendar days from the date that the mediation between and among the parties to this

action has been concluded without successful resolution.

        IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be executed in

counterparts, all of which together shall be deemed to be one and the same document.

00044086

IT IS FURTHER STIPULATED AND AGREED that a signature transmitted by

facsimile or as an attachment to an e-mail (for example, in "pdf" format) shall be considered or

original for all purposes.

IT IS FURTHER STIPULATED AND AGREED that this Stipulation will not confer

personal jurisdiction over defendants Halfmoon Investments LLC (sometimes doing business as

Digital1Stop), Mill Creek Entertainment, LLC and Ian Warfield in any court located within the

State of New York and that these defendants expressly reserve, and have not waived, defenses

with respect to personal jurisdiction.


Dated: May 1, 2007

MORITT HOCK HAMROFF
& HOROWITZ LLP

By:  _____
     Douglas J. ~~Bohm~~ &~~LOTTI~~
     400 Garden City Plaza
     Garden City, New York 11530
     (Voice) 516.873.2000
     (Fax)   516.873.2110

Attorneys for Plaintiffs Philip
Hopkins and Ralph Stevens
sometimes doing business as
Owzman Management, now
known as Owzman Management
& Consulting, Inc.

BRUNELLE, HADJIKOW
& WELTZ, P.C.

By:  _____
     Timothy P. Kebbe
     40 Broad Street, 6th Floor
     New York, New York 1004
     (Voice) 212.809.9100
     (Fax)   212.809.3219

Attorneys for Defendant
Visual Treasures, LLC

HOFFMAN & POLLOK LLP

By:  _____
     William A. Rome
     260 Madison Avenue
     New York, New York 10016
     (Voice) 212.679.2900
     (Fax)   212.679.1844

Attorneys for Defendants
Halfmoon Investments, LLC
sometimes doing business as
Digital1Stop, Mill Creek
Entertainment LLC and Ian Warfield

00044086                              -2-